Let's call the first case. 12-1950, Ernest Littleton. Will the attorneys who are going to make a presentation please step up to the podium, identify yourselves, and the party you represent. Good morning, Your Honors. Rachel Kinstren from the Office of the State Appellate Defender on behalf of the appellant, Ernest Littleton. Good morning. Mary Needham, NEEDHAM, Assistant State's Attorney on behalf of the people of the state of Illinois. Good morning. We have two cases that are scheduled, and we have allotted 30 minutes for each case. Our goal is to finish within that time. If we run a little bit over, that'll be fine. The time for each case will be divided equally. The appellant may reserve some time for rebuttal, if they wish. OK, with that, may I proceed? May it please the court and counsel, Littleton raised three issues in his brief, but today I'd like to focus on the first issue, and I'd also like to reserve five minutes for rebuttal. At issue in this argument is whether the trial court's admission of evidence of other robberies denied Littleton a fair trial. And there are really two considerations. The first is whether this evidence was substantively admissible, and the second for purposes other than propensity. The trial court, in this case, indicated that it was considering evidence of other robberies, only to establish modus operandi. The second consideration is whether the evidence of the 94 and 97 robberies, as testified to by two retired police officers, was procedurally admissible. It was not based on personal knowledge, but rather on conversations that the officers had with arresting officers, witnesses, and other victims. And Littleton contends that it was hearsay and violated his right of confrontation. Which area is, in your mind, your strongest argument? I think probably the confrontation clause issue is the strongest. Then why don't we focus on that? OK. So turning to whether this is procedurally admissible, as the public defender represented, the evidence of the other crimes was rank hearsay. The officers didn't have any personal knowledge. They weren't there when the crimes were committed. They were testifying to events that had absolutely nothing to do with the purpose for which the other crimes acts were admitted, which is modus operandi, because they were testifying to things like the circumstances of his arrest, a brief chase in one of the 97 robberies, or 94 robberies in which he was found guilty. This is not a case where there's an uncharged case, or where he was found guilty after the trial. This is a case where the defendant actually pled guilty to a crime. And apparently, there must have been a stipulation of facts. Sure, but I don't think that the fact that there was a guilty plea in this case would prevent him, or somehow limit his right to confrontation in the instant case. And there's actually a section in Crawford, there's a couple of responses to that. What I think you're asking is whether or not the fact that he entered a guilty plea, because when you enter the plea, you somehow apply to a case over a decade later. And I think there's two responses to that. The first is that in Crawford v. Washington, there's a section in the case where, in the majority opinion, where they're talking specifically about plea allocutions. And one of the points that I think Justice Scalia made in the opinion is that plea allocutions are, by their very nature, testimonial. And so to the extent that, and it comes a lot in situations where an accomplice testifies in a subsequent trial. And to the extent that state's prosecutors were relying on statements made in plea allocutions, that it still violated the confrontation clause, because the very nature that they were made under oath meant that it was testimonial. And in fact, there's a section in that decision that said, you know, the fact that it was made under oath makes the confrontation clause right actually stronger. Can we go back to the issue that you started this little part of your argument with, which is that the evidence produced went beyond modus operandi relevance. You don't have a jury here. It's a bench trial. And the judge has said that he only was going to consider it for purposes of modus operandi. Judges are presumed to ignore irrelevant facts, especially when in a situation where they expressly say, I'm only considering it for one purpose. You don't have the problem of a jury misunderstanding those instructions. And in any event, in hearing the motion in limine, the judge would have already heard about the nature of these convictions in ruling on the motions in limine and deciding whether or not to allow this to be admitted. So you have a situation where the trier of fact would have known of these facts in advance and has expressly stated the limited purpose for which he would be considering them. So what's the harm? OK, well, again, it's going to call for a compound response. And the first is, when the state initially presented the other crimes evidence, when they filed their motion to admit the other crimes evidence, it was through the guise of preliminary hearing testimony. And so what the judge saw was what the state was. Guise? Not through the guise. I mean, that's an artful word. But in the motion, they represented that what they wanted to present was the preliminary hearing testimony of the victims. And so when the judge was considering whether that evidence was admissible for something other than propensity, a permissible other crimes purpose, he was considering what was alleged based on the preliminary hearing testimony. Now, ultimately, he determined that he was going to deny, or I think he termed it allow the state to withdraw that portion of its motion, because he did not believe that the defendant had an adequate opportunity to cross-examine the witnesses during the preliminary hearing. And in making his ruling, one of the things the judge said, if you earn these crimes, you get a chance to wear them. And I don't think that that evinces that he really undertook a balancing of whether or not the evidence was more probative than prejudicial. And I also don't think, going back to points I've made in the brief, that any of this evidence was distinctive enough for the purposes of modus operandi. I mean, really, a lot of what we're talking about here are just the elements of the offense. I mean, in every- It's more than the elements of the offense. There was a striking similarity in location, in the circumstances in which the victims had acted before that time when they were selected by the offender, and in their demographic similarity as being older women, and in the way that these items were taken from them. I mean, these are- and I'm sure you're familiar, for no other reason before, with your research and with the cases cited by the state, that doesn't have to be identical. There's a recognition that you're always going to have some differences in that. So what's your response to all of that? It doesn't have to be identical, but the elements of the offense of robbery to a senior citizen are a taking by threat or use of force when the victim is over the age of 60. Any men, the victims in any of these? Pardon me? Any men, the victims of these robberies? No, there's no- Older women who had been coming from food or other similar type of stores, and after they shop, they're followed by the person who ultimately robs them in a fairly compact geographic area, who knocks them down and flees. Well, again, Your Honor, there's always going to be an element of force in this type of crime. That's an element of the offense. But I don't think there was anything so strikingly similar about these crimes. In the 94 cases, you had the robber using a light blue automobile. Now, there was nothing like that in Shenk's robbery. In the 97 cases, you had the victims walking home. Now, the state and the trial court made the inference that they were followed from the grocery store. But in Shenk's case, there was no evidence that she was actually followed. And in fact, what Shenk testified to was that when she came home, the normally locked gates of her open parking lot were open. And that day, they were not functioning. So it could have easily been a crime of opportunity, as opposed to some sort of plan to follow the victim home from a grocery store. But again, it's very hard in cases of robbery to rely on these other facts for purposes of modus operandi, because the elements, to some degree, are going to be similar. And I think that makes it all the more imperative that you really look at the facts and determine whether or not there's something so highly distinctive. And I think even this case cited by the state, People v. Jones, points this out. Because in that case, the evidence of the other acts was a close in proximity. So temporally, I think it was about four hours apart. The defendant in that case used the same car with the same driver's license plate. And when he committed armed robbery, he concealed the weapon in a whitish, yellowish towel. Now, I think those facts were distinctive. I don't think there's facts in this case that are that distinctive. And I think hinging it on the fact that they were elderly women, again, that's the element of the fence. The state is always going to have to prove the age of the victim when they're charging this crime. Would you like to try to tell us why Moss and Littleton don't control? Moss and Lovejoy? Lovejoy. Sure. So I think when you're looking at Moss and Lovejoy, they allowed that evidence in for a different purpose, ostensibly to show motive. But I think really what that case gets at is they allowed what would normally be considered, they allowed the outcry evidence in really to show the effect of the statements on the defendant. And I think that's a recognized hearsay exception. When you're offering it in to show how it affected the defendant, that's permissible. I think in this case, the only way that the facts of the other crimes become relevant is if you believe that they happened in the way the officers testified to. And in this case, you have to believe that he committed them in a geographical area, that they were elderly, that he robbed one in an Edmar Foods grocery store parking lot, the other in a garage, the other one was walking home. I think two of the victims were walking home in the 97 cases. So the only way they become probative is if you actually believe that the officers' testimony were true. So I think the argument that it's not hearsay, and it's the reliance on Moss and Lovejoy, is just misplaced. And I also want to point out that the Illinois Supreme Court, in a subsequent case, and I readily admit, Your Honor, that I didn't cite this in the brief. I don't think the state did. And it's not exactly on point, but it's called People v. Dabs. And it's a 2010 case. And it involves the statutory exception for propensity evidence in domestic violence cases. And again, I'm not doing this to try to irritate my colleague here, but just consistent with the points I made in the brief, is that basically, when considering whether that statute was constitutional, they also noted that you don't throw out the rules of evidence just because you have a statutory exception allowing this as propensity evidence. You still have to consider whether the probative value outweighs its prejudicial effect. And you still have to apply rules of hearsay. And analyzing the constitutionality of the statute, the Illinois Supreme Court considered that. And they said pretty clearly that you don't throw out the rules of evidence just because the evidence might be substantively admissible under another rule. And so I think the same thing applies here. I don't think we throw out all the rules of evidence just because we want to get in some other acts evidence that shows this guy's a bad guy. As maybe a final point before you reserve the rest of your time, would you like to talk about the impact of the admission of these, and even if it is error, whether the error would be harmless beyond a reasonable doubt? Sure, absolutely. Well, I point out again, and I really didn't touch on this point, but this evidence went in, I think, solely for propensity. There was really more evidence about the 9497 crimes, Jacobitis' crime, which he was initially acquitted of, and his pre-arrest behavior through Officer Prinkowski, than there was about Schenck's actual robbery. And I think the unique fact of this case is just that the state elected on Jacobitis' crime. And by the time they tried Littleton on Schenck's case, she had passed away. And I think when a trier of fact is looking at all this evidence, and they don't have a live victim, and they can't really hear her testimony, and again, Judge Hooks didn't preside over the first trial involving Jacobitis, where Schenck did testify, I think it can't help but sway the trier of fact. When you're hearing all these other bad acts. The identification in conjunction with his plea. How do you get around both of those? I mean, even if you're right on the modus operandi, you've still got his plea and an identification that stand. And tossing everything out, he's still. Well, I think identification, I actually think the identification evidence that came in was irrelevant. I really do. Because when we're talking about. The mere fact that the person observes him, and he speaks to her. You mean Jacobitis? And Jacobitis is in the 97? Dawn Evans. Oh, Dawn Evans. Or her identification. We've already talked about her, but she's the one who pointed and opened court and said, that's the man who robbed Ms. Schenck. She's the one. He spoke to her. Now, what more could I, I mean, if you spoke to me once, am I not going to remember you? Her identification came over a month after this robbery took place. And it came in short, but she identified him based on a photo array. And this was raised in the second argument in my brief. She identified him on the basis of a photo array, where there were six photos. Littleton's photo containing the legible word sentencing information at the bottom. So I think her identification was completely tainted. I mean, it was completely tainted by. If you think that the police are going to have a lot of choir boy people in the photographs, I mean, a reasonable assumption is that when you see a photo array, they're going to be people who've had contact with the police before. Sure, but then why leave the word sentencing information at the bottom of the photo? Well, leaving it may be too strong an inference for what the purpose was. Maybe not deleting it through an oversight is what we're looking at. And the question is, does that oversight, because there's no evidence of intentional act, taint so severely the identification, which is later done beyond a photo ID with an in-court identification? Does that mean we should disregard it? Well, it's not just done in a photo array. It's also done in a lineup photo. And I attached color copies of all these photos to the brief. I think the lineup photo was equally problematic. You had four fillers, which most courts nowadays say that's problematic. And you had Littleton wearing a brown coat and the three other fillers wearing a black coat. One of the fillers significantly larger than the other, they might as well have hung a sign around his neck that said, this is the guy. I mean, I think if you look at the photos, I think they're just, I think it was so unduly suggestive that I think her identification is really suspect. And I think it's hard to determine whether or not she's identifying him because he wore a brown coat, which I would argue is ubiquitous in the city of Chicago in the middle of winter. Or if she actually identified him by seeing him. Which goes to the question of how suggestive that really is. Oh, you mean because he was, I think because he was. People wear brown coats. Sure, but then why not put him in, I mean, people wear brown coats. People wear black coats. People wear varsity jackets. But when you put them in a lineup and you've got one guy wearing a brown coat and you know that the victims identified the robbers wearing a brown coat, and then you put three other fillers in there and they're all wearing black coats, I think it does make a difference. And I think even Jacobitis testified that part of the reason that she identified him was that the brown coat. She said the brown coat did help. And in fact, I think Judge Salone, really, if you look at the quiddo. Five colorblind people, like me. There's no evidence in the record that anybody was colorblind. I mean. I'm saying I kind of don't think that's real meaningful. Well, again, I think in this case, and I'll just briefly wrap up here, I think because the unique facts of this case, by the time they tried him for the shank robbery, she had passed away, you're really left to consider Evans' testimony. There was much more testimony on the other acts. Regardless of the court's representations about using it only for modus operandi, I don't see how you can get around this, not considering it for propensity. I don't think it was admissible for modus operandi, and I don't think it was procedurally admissible for the reasons I've argued. It was hearsay. It was testimonial. It was clearly gotten through the course of investigation. And for these reasons, with respect to this argument, we'd ask you to reverse this conviction, remand for a new trial, and exclude the evidence. OK. Thank you. Ms. Needham? May it please the court and counsel, there's nothing underhanded about the state moving to admit relevant evidence. And other crimes' evidence is relevant to show modus operandi. It's also relevant to show a host of things, and is commonly admitted to show intent, motive, absence of mistake, consciousness of guilt, common scheme, all of these things. Can I just jump to the chase here? I understand that the state attempted to bring in this evidence through use of preliminary hearing transcripts where there was an opportunity to cross-examine and confront the witness, and that the trial judge ruled that you could not do it that way, but then later allowed it to be done through the testimony of police officers. I understand that wasn't the state's choice to go forward in that manner. Nonetheless, I'd like your response to the issue of whether, because it was not the victims of these crimes who described the circumstances that would be elements of proving modus operandi, why that is not impermissible hearsay? Because it's not being offered to prove the truth of the matter asserted, but to prove the modus operandi. Yes, but isn't the truth of the matter asserted the essential element to proving the existence of the modus operandi exception? If we contrast this with Moss and with Lovejoy, we have a completely different basis for the admission. In Moss and in Lovejoy, you had people who had been murdered, and there was an attempt to prove that they were murdered because they had accused an individual of a sexual assault in each of those cases. And the existence of those accusations would supply the element of motive, regardless of the truth or falsity of the allegation of sexual assault. You can see that. In this situation, you're trying to prove modus operandi through facts given not by and not confronted by the defendant of the actual witnesses to it, but by absolute hearsay. And it's dependent. Your ability to achieve the modus operandi exception is conditioned upon the accuracy and the truth of the out the officer is not a witness to. He's a witness to the statement, but not to the facts. So isn't that a huge distinction between the use of hearsay here and in the other cases? There is a difference. That's evident. But it's still not hearsay, because it's not being offered for that. The fact that it's true. So if it's the critical fact that will allow the admission of the evidence, if you say, but we're not doing it for that purpose, then that's all right. Where's a case other than Moss and Lovejoy, which we've just established, we're not dependent on the truth of the out-of-court statement, that gets over the fact that the defendant didn't have the opportunity to cross-examine and confront the people from whom the information is gleaned? Well, my first response would be Moss and Lovejoy don't say that the other crimes evidence comes in because it's motive. They say it comes in, it's not hearsay, because it comes in for any other reason. In those cases, it was motive. In this case, it's going to modus operandi, one of the other relevant and legitimate reasons for admitting other crimes evidence. But modus operandi is, in fact, identification. And the only purpose of the modus operandi is to say, this is the guy who did it. So in order for it to be any use at all, you have to be saying substantively, Littleton did this. Right, you have to believe if you're going to accept it as modus operandi. So it's different than saying that he thought, as in the other cases where somebody is accusing me of something, and that's true, and I have a motive to do it. In this case, we're talking that this is the guy that did it, because this is the way he functions. This is the way he does his job. Well, that's not, it's not being offered to show propensity, say, this is the robber because, no. It's to identify him, because it's the way he does it. Correct. But in this case, it's even, I would say, stronger than in Mosser Lovejoy, because you have four judicial admissions that I am the person that committed these. So if hearsay. Now you're going to the issue of whether, if it is error, whether the error is harmless or not. You can't ignore the first step, which is whether this is impermissible hearsay. And don't conflate that with whether there is other evidence that would mean that this is harmless beyond a reasonable doubt, because right now we're focusing on whether it was error. OK. OK. But if it's, and I understand that, because it's a little bit of a distinction, because if you're looking at the substantive evidence underneath, it shouldn't matter whether, I shouldn't say it shouldn't matter, but whether it's true or not is not the issue. It's what is being offered and admitted for. Here, it's undeniably true that he committed these offenses. So it's not being offered to show that he committed those offenses. It's being offered to show that his robbery of shank was his handiwork. And the handiwork depends upon not the observations of the police officer who testified, but on the observations of the victims who were absent and, as I said before, through the decision of the judge, not put in a situation where their testimony was able to be confronted, but rather in somebody else's recollection and synthesis of what these people who were absent had said. And without relying on the truth or accuracy of that, then it doesn't prove that this was his handiwork, that we can identify him from that. And so that's the key distinction that I think is missing from your analysis. I think what he's really trying to say is Hooks made two errors. Number one should have come in, number two shouldn't. And had that happened, we wouldn't be here probably. Correct. But also, I would say that Moss and Lovejoy do not anticipate carving out exceptions for different, different. You are giving the most expansive possible reading to Moss and Lovejoy, which I understand rhetorically is a good thing for you to do. I'd also say that the purpose for excluding hearsay is the reliability of the evidence. It needs to be reliable. And in this case, we have to look at the facts. And we know that this evidence is reliable. So if that's going to be the problem. So why do you need it? I beg your pardon? Why do you need this if you can otherwise prove? You're trying to prove it through, well, I've gone over it. We're trying to prove the handiwork. That's correct. By showing that that defendant could have. But you don't have a witness to the handiwork. Not anymore, that's true. That's the problem. But that doesn't necessarily mean that it's hearsay. Would you like to address whether this is harmless error if we indeed find that it was error? Well, it's entirely harmless. And because you have a judge who specifically says, I'm admitting it for this purpose only. And he considers it for that purpose only. He's not considering it for propensity. He is, even in his written decision, he says, this is what I'm considering it for. And in addition to that, you don't need the modus operandi because you have Dawn Evans, who observes, she observes the defendant before he commits the crime from a distance of three feet away. She sees him go between two cars. And here's Ms. Schenck call out. And then she sees defendant run from between the two cars. He taunts her from the other side of the fence with asking her if she wants the purse. And then when she says, yes, I do, he says, nah, and runs away. Her identification is really overwhelming evidence of defendant's guilt. And the photos, if you look at them, they are six very similar looking gentlemen, facial hair. Their appearances, the photo array was put together via a computer program that specifically looks for similarities and features. There's nothing to suggest that Ms. Evans identified defendant because there was some writing on that photograph. She also identified him in a photo, I mean, a line up that the photo also indicates, except for one large gentleman, those are four very similar looking subjects as far as their appearance, their facial hair, their skin tone. So also the jacobitis. Though that was other crimes evidence. No, but I mean, regardless of whether there was a hearsay violation in regard to the other three instances, you do have not only Evans' identification, but also jacobitis' identification. Yes, and if I could just point out that in two of the older cases, defendant made admissions to the police officers that, yes, he grabbed the woman's purse and forcefully took it. So that would also be evidence that would not be excluded because that was not hearsay. For these reasons, we ask that you affirm defendant's conviction. Thank you. Ms. Kinshman. First, I mean, I think there is no blanket other crimes exception to the hearsay rule. I just don't see any support for that, even in Moss or Lovejoy. I don't think you'd get a fight on that. OK. But the second thing, and the second consideration was the bulk of the last portion of the state's response was whether this was harmless. And I would just point out the excessive detail about the 94 and 97 robberies. I mean, we have, at one point, we have the officers testifying in the circumstances of the arrest describing a chase where Littleton got into a squad car, then got out of a squad car, and then was apprehended. Judge said he wasn't considering it for that purpose. What about the two eyewitness identifications? With respect to the eyewitness identifications, first of all, the victim, Schenck, did not identify him. We have Evans identifying him. Right, you put in your brief that somehow this is improper bolstering of Schenck's testimony, and Schenck's testimony is really irrelevant to identification. I mean, you probably meant Evans. Evans, but the interesting thing about Jacobitis is this. If the evidence is coming in for modus operandi, what's really relevant here is the circumstance of the robbery. I think had her identification been believed in the first trial, Littleton wouldn't have been acquitted. So I think to prescribe any weight to Jacobitis' identification really goes against the fact that he was acquitted. And I think if the limited purpose of the evidence is to show his method of working, then what's relevant isn't so much the identifications or the fact that the officers or Jacobitis is testifying that she identified him. It's really those facts and circumstances that go to what modus operandi means, which is method of working. And I think to point out that Jacobitis identified him, particularly in the portion of the written memorandum that's entitled, Sufficiency of the Evidence, really was inappropriate. Because he was acquitted of Jacobitis, which to my mind, you can believe she was robbed, but believe that her identification was inaccurate, which is, I think, what happened when this case was tried initially before Judge Salone. So the excessive detail coupled with the way they consider Jacobitis' testimony, Judge Hooks considered Jacobitis' testimony, coupled with the fact that Schenck was deceased at the time, I think really shows how non-harmless this was. Again, there is more evidence in this case about every other bad act. I think the fact that he was initially acquitted and the state was prevented from bringing in this evidence in the first trial really meant that they tried to get this evidence in on the second trial, even going so far as to have Officer Prenkowski testify about pre-arrest behavior, which contrary to the record was not needed to show law enforcement contact because they made the decision to arrest him after the photo array identification. And Officer Prenkowski wasn't the arresting officer. He called somebody from the 8th District and then proceeded to follow him. So I think for all these reasons, we would ask this court respectfully to reverse his conviction, remand for a new trial, excluding this evidence for the purposes of this issue. Thank you. Thank you, Ms. Ginsburg. The case was well-argued, well-briefed. We enjoyed it. We'll issue a decision in due course. Thank you.